

**ORDERED in the Southern District of Florida on April 30, 2018.**

                                                                                          _____
                                                                                          **Robert A. Mark, Judge**
                                                                                          **United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| In re:  ) | CASE NO.12-26304-RAM |
| ) | CHAPTER 13 |
| LILIANA MARIA HADFEG,  ) |  |
| ) |  |
| Debtor.  ) |  |
| ) |  |

**ORDER (1) VACATING ORDER DEEMING DEBTOR CURRENT;**
**AND (2) DETERMINING SCOPE OF PRECLUSIVE EFFECT OF PLAN**

The Debtor in this chapter 13 case has completed plan payments under a 60-month plan.  The plan provides for a cure of prepetition debt owed to her condominium association and for regular monthly payments of her association fees.  The questions addressed in this Order arise from an order deeming the debtor current on all obligations due the association.

The motion before the Court is Aquarius by the Sea-A Condominium, Inc.'s (the "Association") Expedited Motion for

Relief (the "Motion") [DE #148]. In the Motion, the Association seeks relief from a Court order [DE #126] that, as amended, provides that "[t]he Debtor is current on all her payments due to the Association . . . including any special assessment payments through July of 2017." [DE #143, p.2] (the "Order Deeming Debtor Current").

The Association has not challenged or moved for relief from the Order Confirming Chapter 13 Plan [DE #72] (the "Confirmation Order"). *See* Motion [DE #148, p.6]. Rather, it simply seeks relief from the Order Deeming Debtor Current.

Because of procedural deficiencies, the Court is vacating the Order Deeming Debtor Current. The Court also is finding that the Debtor's chapter 13 plan has determined, with finality, the Debtor's prepetition liability to the Association and precludes the Association from enforcing any alleged additional prepetition claims against the Debtor or against any subsequent owner of her condominium units. Finally, this Order finds that the plan did not extinguish the Debtor's obligation to pay post-petition special assessments that were not provided for in her plan.

## Background

The debtor, Liliana Hadfeg (the "Debtor"), confirmed a Chapter 13 plan commonly referred to as a "cure and maintain" plan. In the plan, the Debtor listed the amount of the prepetition

2

arrearage she believed she owed to the Association. The plan provides for monthly payments to cure that arrearage over the life of the plan and provides for payment of the regular Association payments each month.

The plan confirmed in this case, the Debtor's 2nd Amended Plan [DE #63] (the "Plan"), contains the following treatment of prepetition and postpetition obligations to the Association:

Secured Creditors: [Retain Liens pursuant to 11 USC § 1325 (a)(5)] Mortgage(s)/Liens on Real or Personal Property:

| # | Creditor | Address | Account No | | Amount | Months |
|---|---|---|---|---|---|---|
| 1. | Aquarius By the Sea-A Condo, Inc | c/o Eqramul I Chowdhury, R.A. 3850 Bird Road, PH Coral Gables, FL 33146 | Unit 403 | Arrearage on Petition Date | $ 2,500.00 | |
| | | | | Arrears Payment $ | 41.67 /month | (Months 1 to 60) |
| | | | | Regular Payment $ | 250.00 /month | (Months 1 to 8) |
| | | | | | 285.00 /month | (Months 9 to 60) |
| 2. | Aquarius By the Sea-A Condo, Inc | c/o Eqramul I Chowdhury, R.A. 3850 Bird Road, PH Coral Gables, FL 33146 | Unit 404 | Arrearage on Petition Date | $ 2,500.00 | |
| | | | | Arrears Payment $ | 41.67 /month | (Months 1 to 60) |
| | | | | Regular Payment $ | 250.00 /month | (Months 1 to 8) |
| | | | | | 285.00 /month | (Months 9 to 60) |

The Association did not object to confirmation of the Plan, which was confirmed on April 19, 2013 [DE #72]. Nor has the Association filed a proof of claim in this case. The Association first apprised the Debtor and this Court of its objection to the Debtor's "cure and maintain" Plan with the filing of its Motion on October 18, 2017, more than four (4) years after plan confirmation, and after the Debtor completed her payments under the Plan. *See* Chapter 13 Trustee's Notice of Plan Completion [DE# 165].

**<u>Prepetition Arrearages:</u>**
**<u>Preclusive Effect of a Plan and Confirmation Order</u>**

In the Motion, the Association argues that the amount of the prepetition arrearage treated by the Debtor in her Plan ($5,000) is less than the actual prepetition debt, which it alleges is $38,480. However, the Association is not seeking to enforce the Debtor's *in personam* liability for the $33,480 difference. The Association's position is that "prepetition fees are discharged as to any personal liability of the debtor, but that the underlying lien remains." [DE #148, p.4]. In short, the Association is challenging the Debtor's ability to fix the Association's *in rem* claim against the condominium units for prepetition arrearages at the amount of the prepetition arrearage set forth in the Plan.

The Court rejects the Association's argument that its alleged prepetition arrearage claim remains enforceable despite its failure to file a proof of claim or object to the Plan. The Association correctly argues that, generally, secured creditors do not have to file a proof of claim or object to confirmation of a plan for their security interests to survive a debtor's bankruptcy. In fact, amended Fed. R. Bankr. P. 3002(a) clarifies that "[a] lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim." But that principle does not affect the result here.

The Association did not lose its lien rights by failing to file a claim, but the order confirming the Plan is *res judicata* on the amount of debt secured by the lien. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) (a confirmation order is a final judgment); *see also In re Berrouet*, 469 B.R. 393 (Bankr. N.D. Ga. 2012) ("'[O]nce a plan is confirmed, it is *res judicata* to all issues that were or could have been brought prior to confirmation.'" (quoting *In re Cruz*, 253 B.R. 638, 641 (Bankr. D.N.J. 2000)); *In re Franklin*, 448 B.R. 744 (Bankr. M.D. La. 2011) (mortgage creditor bound by prepetition arrearage listed in the confirmed plan when it failed to file a timely proof of claim asserting a larger arrearage).

The Association argues alternatively that a debtor cannot modify a Florida condominium association's covenant running with the land.  In two bankruptcy court decisions from this district, *In re Tellez-Sain*, Case No. 13-13325-BKC-LMI, 2013 WL 5852496 (Bankr. S. D. Fla. Oct. 30, 2013), and *In re Gonzales*, Case No. 07-14968-BKC-AJC, 2010 WL 1571172 (Bankr. S.D. Fla. April 20, 2010), the courts reasoned that property rights, even in bankruptcy, are governed by state law, and the Florida Condominium Act specifies that, upon the sale of a condominium, pre-sale debts owing to the condominium association become the *in personam* obligations of the new owners and continue to be *in rem*

5

encumbrances on the condominium.  *See* Fla. Stat. § 720.3085(2)(b) ("A parcel owner is jointly and severally liable with the previous parcel owner for all unpaid assessments that come due up to the time of transfer of title").

As Judge Isicoff explained in *Tellez-Sain*,

> no matter what the Debtors accomplish in their bankruptcy with respect to their liability for the assessments, nothing under applicable bankruptcy or non-bankruptcy law can impact a subsequent owner's *in personam* liability for the unpaid assessments. The Florida Statutes, as well as each of the Declarations, unequivocally provide that a subsequent purchaser is liable for unpaid assessments of the prior owner. That independent statutory liability is secured by a lien on that subsequent owner's interest in the parcel or condominium at issue.

*In re Tellez-Sain*, at *3 (footnotes omitted).

The Association's reliance on the Florida Condominium Act is misplaced.  The Act gives rise to a statutory encumbrance for <u>unpaid</u> assessments.  All of the cases cited by the Association, including those cited in the Association's supplemental filing [DE #159],[1] are factually distinguishable because they involve debtors who indisputably are not fully paying their prepetition arrearages in a plan.

---

[1] *See In re Montalvo*, 546 B.R. 880 (Bankr. M.D. Fla. 2016) (debtor surrendered his interest in condominiums); Transcript of July 12, 2012 hearing before Judge Kimball in *In re Canales*, Case No. 11-25976-BKC-EPK, DE #54 (chapter 7 case reopened for purposes of adding condominium association as an omitted creditor).

6

*Tellez-Sain* and *Gonzales*, for example, are "strip off" cases. In a "strip off" case, by obtaining a valuation of the property that is less than the senior mortgage debt, the debtor is "stripping off" the condominium association's secured claim and reclassifying the claim as an unsecured claim. In virtually all "strip off" plans, the debtor pays only a small percentage of the unsecured claim.

The Debtor in this case has satisfied her prepetition debt in full. Entry of the Confirmation Order bound the Association to the prepetition arrearage provisions of the Plan, including the amount of the arrearage and the payment terms. 11 U.S.C. § 1327(a). Upon completion of the Plan, there is no prepetition debt, 11 U.S.C. § 1328(a), and neither the *in rem* rights of the Association nor its rights under Florida's Condominium laws to enforce debts against subsequent purchasers revives a fully-paid and extinguished prepetition debt.

Removing bankruptcy from the equation reveals the Association's untenable position. For example, assume that the Debtor had filed a state court action seeking a declaratory judgment that she owed the Association $5,000 on July 3, 2012 (the petition date), and a default final judgment was entered against the Association. Without question, the Association's *in personam* claim against the Debtor and *in rem* claim against the condominium

7

units would be fixed at $5,000. Unless the default judgment was set aside, the Association would have no basis to argue that the difference between the amount it contended was due from the Debtor and the amount set forth in the default final judgment would somehow survive.

Bankruptcy does not alter this analysis. While a bankruptcy court cannot eliminate a condominium association's statutory enforcement rights, it can determine with finality the amounts that are owed and enforceable. There are a number of ways in which a bankruptcy court makes such determinations, including contested matters in the main bankruptcy case involving the allowance of a claim under 11 U.S.C. §§ 502 and 506, or adversary proceedings to determine the validity, priority, or extent of a lien under Fed. R. Bankr. P. 7001. In this case, the Court's determination occurred through the plan confirmation process. The Confirmation Order, to which the Association did not and does not object, is equivalent to a state court default final judgment. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (explicitly holding that a bankruptcy court's confirmation order is a final judgment).

The policy favoring finality of confirmation orders is strong. *In re Fili,* 275 B.R. 370, 373 (B.A.P. 1st Cir. 2001) (holding "[p]lan confirmation is a final order, with *res judicata*

effect, and is imbued with the strong policy favoring finality" and collecting cases in support of that proposition). The policy is so strong that in *Espinosa*, the Supreme Court declined to grant relief from an order confirming a chapter 13 plan that contained a discharge provision flagrantly at odds with the proscriptions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Despite finding that confirmation of the plan was "legal error," the Supreme Court held that the confirmation order "remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal." *Espinosa* at 275. As simply stated by the Supreme Court, "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." *Id.; see also Fili* at 374 ("A creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own risk.").

In sum, the Association's *in rem* claim against the condominium units for the alleged balance due on account of prepetition arrearages ($33,480), and *in personam* claim against potential future owners of the condominiums for the same balance ($33,480), are no longer enforceable. The prepetition debt was determined with finality in the confirmed Plan and paid in full.

9

**Postpetition Arrearages:**
**Insufficient Notice and Lack of Due Process**

The Debtor's postpetition obligations are a different story. The Debtor's Motion to Compel [the Association] to Deem Condominium Association Payments Current (the "Motion to Compel") [DE #118] is a two-page, four-paragraph, five-sentence pleading. In it, and of relevance, the Debtor states as follows:

> Aquarius by the Sea-A Condominium, Inc. is the Debtor's homeowner's association, and the Debtor's arrearage and regular monthly payments are being paid through the Debtor's confirmed Second Amended Chapter 13 Plan, [ECF 63].
>
> All payments under the Debtor's confirmed Second Amended Chapter 13 Plan have been made and no Notice of Payment Change has been filed with this Court.
>
> WHEREFORE, the Debtor requests this Honorable Court to enter an Order compelling Aquarius by the Sea-A Condominium, Inc. to deem the condominium association current and any other relief this Court deems proper under the circumstances.

The Debtor makes no mention of special assessments anywhere in her Motion to Compel or in the Plan. The real dispute regarding postpetition obligations in this case is not whether the Debtor is current on her "regular monthly payments," but whether her Plan cured amounts due for items other than regular monthly payments ("Other Charges"), like special assessments, and whether those Other Charges assessed postpetition, which by the Debtor's own admission are not treated in the Plan, are current.

10

Whether the Association, due to allegedly improper service, received proper notice of the Debtor's Motion to Compel and the hearing set thereon is irrelevant.  The Debtor's request for relief is ambiguous, a problem apparent in, and further muddied by, the Debtor's subsequent submission of two orders granting the Motion to Compel.

The first order [DE #126] reads as follows:

The [Motion to Compel] is GRANTED.

The Debtor is current on her association payments to [the Association] through July of 2017.

The second order [DE #143] amends the first and reads as follows:

The [Motion to Compel] is GRANTED.

The Debtor is current on all her payments due to [the Association], including any special assessment payments through July of 2017.

Without question, the full extent of the relief requested by the Debtor was ambiguous.  The Motion to Compel specifies that, with regards to postpetition obligations, the Debtor is paying only her regular monthly payments through the Plan. *See* Motion to Compel ("The Debtor's arrearage and <u>regular</u> monthly payments are being paid through [the Plan.]" (emphasis added)).  The Debtor stated further that she is current with her Plan payments.  What about Other Charges assessed postpetition that were not treated in the Plan?

11

The Court rejects the Debtor's argument that the Association's failure to file a Notice of Payment Change is tantamount to a representation that out-of-Plan payments are current.[2] Other Charges are not the type of "contractual installment payments" subject of Fed. R. Bankr. P. 3002.1, or this Court's local rule.

In this case, the Debtor's intent to extinguish the Association's secured claim for Other Charges assessed postpetition was not apparent in the Motion to Compel. Submitting an "amended" order that for the first time incorporates the words "special assessment" is not due process. *See Espinosa* at 272 ("Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1905)).

In sum, the Association is entitled to relief from the Order Deeming Debtor Current and a finding that the Other Charges assessed postpetition remain outstanding claims enforceable

---

[2] This Court's Local Rules (L.R. 3070-1(B)(1)) expand the scope of secured creditors subject of the filing requirements of Fed. R. Bankr. P. 3002.1(b) to include condominium associations with liens on real property other than the debtor's principal residence.

against the Debtor and, under Florida law, enforceable against subsequent purchasers if the condominium units are sold.

## Conclusion

The special rights of Florida condominium associations to collect association fees and assessments do not trump the preclusive effect of a "cure" plan confirmed without objection, particularly where, as here, the creditor did not file a proof of claim or challenge its treatment under the plan until after payment in full under a five-year plan. Conversely, a plan that does not include payment of postpetition special assessments does not extinguish an association's rights to enforce those obligations.

Therefore, it is –

**ORDERED** as follows:

1. The Association's Motion is Granted.

2. The Order Deeming Debtor Current is vacated.

3. The Motion to Compel is granted in part as set forth below.

4. When the Debtor obtains her discharge now that she has completed her Plan, the Association will have no *in rem* claim against the condominium units, and no *in personam* claim against potential future owners of the condominium units, on account of alleged prepetition arrearages not provided for in the Plan.

5. As to postpetition obligations, the only amounts deemed satisfied by the Plan are the $285.00 regular monthly payments that became due postpetition and were paid under the Plan. All other postpetition obligations, including special assessments, remain enforceable against the Debtor and any subsequent purchaser of her units and remain a lien on the units.

###

COPIES TO:

Joel M. Aresty, Esq.
308 1st Avenue South
Tierra Verde, FL  33715
(Counsel for the Association)

Michael A. Frank, Esq.
10 NW LeJeune Road, Suite 620
Miami, FL  33126
(Counsel for the Debtor)

Nancy K. Neidich, Chapter 13 Trustee
P.O. Box 279806
Miramar, FL  33027